UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KYANA FENNELL and | § | |
| LAWANDA FENNELL-KINNEY, | § | |
| as Next Friend of | § | |
| KYRIANNA ADAMS FENNELL | § | |
| and KAVIN JOHNSON, | § | Cv. No. SA:12-CV-00941-DAE |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| MARION INDEPENDENT SCHOOL | § | |
| DISTRICT; GLENN DAVIS, | § | |
| individually and in his official capacity | § | |
| as former athletic director of Marion | § | |
| High School; ASHLEY SMITH, | § | |
| individually and in her official capacity | § | |
| as a former coach at Marion High | § | |
| School; and CYNTHIA MANLEY, | § | |
| individually and in her official capacity | § | |
| as a former coach at Marion High | § | |
| School, | § | |
| | § | |
| Defendants. | § | |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM

On January 23, 2013, the Court heard Defendants' Motion to Dismiss for

Failure to State a Claim (doc. # 6). R. Chris Pittard, Esq., appeared at the hearing

on behalf of Plaintiffs; Donald Craig Wood, Esq., and Stacy Tuer Castillo, Esq.,

appeared on behalf of Defendants. After reviewing the motion and the supporting

1

and opposing memoranda, the Court **GRANTS** Defendants' Motion.  For the reasons that follow, Plaintiffs' claims against the Individual Defendants in their official capacity are **DISMISSED WITH PREJUDICE**; Plaintiffs' remaining claims are **DISMISSED WITHOUT PREJUDICE**; and Plaintiffs are **GRANTED LEAVE** to file a Second Amended Complaint on or before March 14, 2013.

<u>BACKGROUND</u>

Plaintiff Kyana Fennell ("Kyana"), age 18, is a former student of the Marion Independent School District ("Marion ISD") and an African-American. (Doc. # 4 at 4.)  Plaintiff Lawanda Fennell-Kinney ("Fennell-Kinney") is Kyana's mother and next friend of Plaintiffs Kyrianna "Kyra" Adams Fennel ("Kyra") and Kavin Johnson ("Kavin"), her minor children who are also African-American and former students of the Marion ISD.  (<u>Id.</u>)  On October 14, 2012, the aforementioned plaintiffs (collectively, "Plaintiffs") filed suit against Defendants Marion Independent School District ("the Marion ISD"); Glenn Davis, former athletic director of Marion High School, individually and in his official capacity; Ashley Smith, former coach at Marion High School, individually and in her official capacity; and Cynthia Manley, also a former coach at Marion High School,

individually and in her official capacity (collectively, "Defendants").  (Doc. # 1.)
Plaintiffs filed an Amended Complaint on October 15, 2012.  (Doc. # 4.)

      According to the Amended Complaint, Kyana, Kyra, and Kavin
attended school in the Marion Independent School District beginning in the first
grade and continuing through the 2011–2012 academic school year, when they
were allegedly "forced to leave . . . because of a long and sad history of racial
discrimination and a hostile environment targeted at them."  (Id.)

      The Complaint alleges that as early as 2008 Kyana, Kyra, and Kavin
"began experiencing racially-based comments, taunts and electronic images sent
via cell phone texts and on social media websites such as Facebook."  (Id.)  In that
year, Kyra received a text message from a white classmate that contained an
animation of the Klansmen of the Ku Klux Klan swinging a noose to the tune of a
song that was popular at the time.  (Id.)  While Kyra was suspended for three days
after confronting the white classmate, Plaintiffs allege that the school took no
action against the white classmate.  (Id. at 4–5.)

      Plaintiffs allege that in February 2011 one white girl and two Hispanic
girls surrounded Kavin at her locker and began taunting her.  (Id. at 5.)  When
Kavin tried to extricate herself from the situation, a least one of the girls punched
her and threw her back against her locker.  (Id.)  Plaintiffs claim that the school

suspended Kavin and one of the Hispanic girls based on this incident but "took no action against [Kavin's] white attacker."  (Id.)

Plaintiffs allege that on numerous occasions from 2011 to 2012, Kavin reported to the Marion Middle School office that multiple white classmates had called her such names as "blackie," "black girl," and "nigger"[1]; the school took no action.  (Id.)  Similarly, when Kavin tried out for the middle school's cheerleading team, white classmates told her that "black girls weren't pretty enough to be cheerleaders" and that she "looked like a boy."  (Id.)  Although Kavin made the cheerleading team, the Complaint alleges that she was "excluded from cheerleader activities sponsored by many of her white classmates, and ostracized by her teammates."  (Id.)  In February 2012, the Amended Complaint alleges that a classmate spat in Kavin's face and asked, "Why don't you people just move?"  (Id. at 7.)

The Complaint alleges that a white boy called Kyana a "nigger" in kindergarten and that, while Kyana was disciplined for punching him in retaliation, the school took no action against him for his racial slur.  (Id. at 5.)  Similarly, no action was taken against a white classmate who called Kyana a "nigger" in middle

---

[1] The Court finds such epithets abhorrent and repeats them and others herein only because they are essential to an understanding of the Plaintiffs' claims.

school or a white classmate who called Kyana a "stupid nigger" in high school.
(Id. at 5–6.)

Plaintiffs further allege that a number of other racially motivated incidents occurred while Kyana was in high school.  First, the Amended Complaint alleges that "Kyana has been targeted by the white assistant principal, Kelly Walters, and the white athletic director, Defendant Glenn Davis, for her 'ethnic' hairstyles . . . ."; Plaintiffs do not explain what "targeted" means in this context. (Id.)  Second, Plaintiffs allege that in January 2012, Defendant Ashley Smith, a white coach and teacher, told Kyana, in front of other students, that she was a "bad influence" because she had had a child at the age of seventeen.  (Id.)

The Amended Complaint also describes an incident wherein Justin Farris, fiancé of Defendant Ashley Smith, "aggressively" confronted Plaintiff Lawanda Fennell-Kinney at a basketball game, leading the security guards to escort him from the building.  (Id.)  Plaintiffs allege that Mr. Farris was responding to a Facebook post in which Ms. Fennell-Kinney had described, though without naming Defendant Ashley Smith, the comment Smith had made to Plaintiff Kyana about being a "bad influence."  (Id.)  The Amended Complaint describes Ms. Fennell-Kinney's fear for Kyana's safety, her meeting a few days later with various school administrators and Defendant Glenn Davis, the administrators'

decision that Mr. Farris would not be permitted to attend that night's game, and the decision that Defendant Smith would not coach that game.  (Id.)  Plaintiffs further allege that several students harassed Kyana the following day.  (Id. at 7.)

The Amended Complaint also describes an incident wherein Ms. Fennell-Kinney discovered a noose and a racially hostile note next to Kyana's car. The note allegedly said:

> Die fuckin "nigger sisters"....Bitches!!!
> You can never bring our families down...
> Whites will always rule this town and this school!!!!
> Damn spooks!!!!
> So go ahead and file your stupid damn complaints and grievances.....
> NIGGERS.....and that "Nigger lover" you have a baby with.....

(Id.)  Plaintiffs allege that they reported this incident to the Marion ISD police, the Marion Police Department, and eventually the FBI.  (Id.)  However, they state that "there were no suspects and no arrests" because "[t]he video surveillance equipment for the parking lot somehow failed to show any activity around Kyana's car in the relevant time period."  (Id.)  Shortly thereafter, Doug Giles, a ward of Plaintiff Lawanda Fennell-Kinney, allegedly began experiencing racial taunts and found a noose near his locker, "contribut[ing] to the racially hostile environment being experienced by Plaintiffs . . . ."  (Id.)

The Amended Complaint then describes an incident wherein Defendant Cynthia Manley drove the team bus to a softball game without Plaintiff

Kyra Fennell, who was a member of the team but who had signed out of school during the lunch period and was the last to arrive.  (Id. at 8.)  Plaintiffs allege that Defendant Manley then did not permit Kyra to play in that day's game.  Then, after Kyra left that game early, Defendant Manley did not permit her to play in the next game either.  (Id.)  Plaintiffs allege that a team photo was taken at that game and that Kyra's teammates joked that one of the girls in the photo, who appeared to have darker skin because she was in a shadow, was in fact Kyra.  (Id.)  Kyra got into an argument with two white teammates over these comments, and Plaintiffs allege that Defendant Manley, who had not witnessed the argument, encouraged the teammates "to file unsubstantiated criminal charges against Kyra . . . ." (Id. at 9.)

        Finally, the Amended Complaint alleges that Plaintiff Lawanda Fennell-Kinney filed a grievance with the Marion ISD that ended up before the entire Board of Trustees.  (Id. at 9–10.)  When the Board did not agree to the remedies Plaintiff Fennell-Kinney recommended, she removed her children from the Marion ISD.  (Id. at 10.)  The Amended Complaint further alleges that Plaintiff Kyra Fennell, who "had received what appeared to be an offer for a spot on the Texas Lutheran University girls' basketball team," lost that offer, without explanation, following media reports of the noose incident.  (Id.)

Plaintiffs allege that Defendants, through their actions as described above, (1) violated Title VI of the Civil Rights Act of 1964 and (2) violated Plaintiffs' Fourteenth Amendment rights to Equal Protection pursuant to 42 U.S.C. § 1983.  (See id. at 3.)  Plaintiffs allege both Title VI violations and Section 1983 violations against the Marion ISD; they allege only Section 1983 violations against Defendant Glenn Davis, Defendant Ashley Smith, and Defendant Cynthia Manley (collectively, "the Individual Defendants").  (Id. at 11–15.)  On November 7, 2012, Defendants timely filed the Motion to Dismiss for Failure to State a Claim that is now before the Court.  (Doc. # 6.)

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Twombly</u>, 550 U.S. 544, 555–56 (2007).  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  <u>See</u> <u>id.</u> at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Iqbal</u>, 556 U.S. at 678 (internal quotations and citations omitted).  Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." <u>Tuchman v. DSC Commc'ns Corp.</u>, 14 F.3d 1061, 1067 (5th Cir. 1994); <u>see also</u> <u>Plotkin v. IP Axess Inc.</u>, 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency

should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

DISCUSSION

I.    Plaintiffs' Section 1983 Claims against the Individual Defendants

Plaintiffs bring Section 1983 claims against the Individual Defendants in both their official capacities and their individual capacities. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330–31 (1986)). In this case, Plaintiffs allege that the Individual Defendants violated Plaintiffs' rights under the Equal Protection Clause by discriminating against them on the basis of race. (Doc. # 4 at 13–15.) For the reasons that follow, the Court dismisses Plaintiffs' claims against the Individual Defendants.

A.    <u>Official Capacity</u>

Defendants move to dismiss Plaintiffs' claims against each of the Individual Defendants in their official capacity because "the claims are redundant, being the same as their Section 1983 claims against the [Marion ISD]." (Doc. # 6 at 3.) Defendants are correct. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Monell v. Dep't. of Social Servs. of the City of New York</u>, 436 U.S. 658, 690 n. 55. (1978). In <u>Kentucky v. Graham</u>, the Supreme Court explained that "[t]here is no longer a need to bring official capacity actions against local government officials [because] under <u>Monell</u>, . . . local government units can be sued directly." 473 U.S. 159, 165 & 167 n. 14 (1985).

Plaintiffs have failed to proffer any relief that can be granted to them on their official-capacity claims that they cannot obtain based on their § 1983 claims against the Marion ISD. Under these circumstances, it is appropriate to dismiss the <u>official-capacity</u> claims against the Individual Defendants as redundant. See <u>Sanders-Burns v. City of Plano</u>, 594 F.3d 366, 373 (5th Cir. 2010) (noting that plaintiff's § 1983 claims against a government entity "render[ed] any official capacity claim against [an employee of that entity] redundant"); <u>Brittany B. v. Martinez</u>, 494 F. Supp. 2d 534, 539 (W.D. Tex. 2007)

("The Court will DISMISS the claim against the Board members in their official capacities because the section 1983 claims against them are redundant of the section 1983 claim against the District.").  Accordingly, Plaintiffs' official-capacity claims against the Individual Defendants are dismissed with prejudice.

      B.    <u>Personal Capacity</u>

        To the extent that Plaintiffs bring § 1983 claims against the Individual Defendants in their individual capacities, the Individual Defendants assert that they are entitled to the defense of qualified immunity.  (Doc. # 6 at 3.)  Qualified immunity shields a government official from civil liability for damages based on the performance of discretionary functions if the official's acts were objectively reasonable in light of clearly established law.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The qualified immunity standard gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law."  <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991).  In suits brought under federal law, government employees are presumptively entitled to the defense of qualified immunity, and once the defense is asserted the burden shifts to the plaintiff to show that immunity does not bar recovery.  <u>Salas v. Carpenter</u>, 980 F.2d 299, 306 (5th Cir. 1992); <u>Bennett v. City of Grand Prairie, Tex.</u>, 883 F.2d 400, 408 (5th Cir. 1989).

"One of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit." Jackson v. City of Beaumont, 958 F.2d 616, 620 (5th Cir. 1992); see also Siegert v. Gilley, 500 U.S. 226, 232 (1991) (same).  Because the doctrine is designed to protect public officials from "the broad-ranging discovery that can be peculiarly disruptive of effective government," questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery. Anderson v. Creighton, 483 U.S. 635, 646 n. 6 (1987) (internal quotations omitted).  "Accordingly, this circuit requires that § 1983 plaintiffs meet heightened pleading requirements in cases, such as this, in which an immunity defense can be raised." Jackson, 958 F.2d at 620 (citing Geter v. Fortenberry, 849 F.2d 1550, 1553 (5th Cir. 1988)).

In assessing a claim of qualified immunity, a court engages in a two-step analysis.  First, the court determines whether a plaintiff has alleged "the violation of a clearly established constitutional right."  Rankin v. Klevenhagen, 5 F.3d 103, 105 (5th Cir. 1993).  If the plaintiff has alleged a constitutional violation, the court then decides if the defendant's conduct was objectively reasonable, because "[e]ven if the official's conduct violated a constitutional right, he is

entitled to qualified immunity if the conduct was objectively reasonable." <u>Rankin</u>, 5 F.3d at 105.

Applying these principles in the instant case, the Court concludes that Defendants' Motion to Dismiss should be granted in favor of each of the Individual Defendants.  Here, Plaintiffs' Amended Complaint on its face does not plead facts sufficient to show that any of the Individual Defendants violated clearly established law, especially in light of this circuit's heightened pleading standard.

Regarding Defendant Glenn Davis, Plaintiffs allege that he "targeted" Plaintiff Kyana for "ethnic hairstyles" but do not explain what, if anything, Mr. Davis did to "target" Kyana.  (<u>See</u> doc. # 4 at 6.)  The Amended Complaint mentions Davis a few more times, but only to state that he was present at the discussion about Kyana's safety concerns following Ms. Fennell-Kinney's altercation with Justin Farris (<u>id</u>); that some of Davis's <u>children</u> made "comments" to the effect that the Fennell-Kinney family should leave Marion (<u>id.</u> at 8); and that Davis "had the authority to override [Kyana's] punishment [from Defendant Manley] but chose not to" (<u>id.</u> at 9).  These facts, even if taken as true, do not suggest that Defendant Davis violated "clearly established law" and are insufficient to state a plausible claim for relief against him.

14

Regarding Defendant Ashley Smith, Plaintiffs allege only that she "told Kyana that she was a 'bad influence' because Kyana had a child at the age of 17." (Id. at 6.)  Plaintiffs do not allege that this statement was motivated by Defendant Smith's racial bias or that other non-African-American students at Marion had children but were not considered "bad influences."  The only other allegation against Defendant Smith is that she made "comments" to the effect that the Fennell-Kinneys should leave Marion.  (Id. at 8.)  Again, these vague allegations are insufficient to overcome the presumption of qualified immunity.

Finally, Plaintiffs allege that Defendant Cynthia Manley drove away on the softball team bus without Plaintiff Kyra.  (Id. at 8–9.)  However, the Amended Complaint itself states that Kyra had been absent from school earlier that day and that Defendant Manley's decision not to start Kyra was based on that absence.  (Id.)  Plaintiffs further complain that Defendant Manley made Kyra sit out of the next game, "effectively punish[ing] Kyra twice for the same alleged infraction."  (Id.)  Again, however, Plaintiffs' own statements bely the claim that Defendant Manley's actions were driven by racial animus: Plaintiffs state that "Ms. Fennell-Kinney arrived at the softball field to take her distraught daughter home" and that "Defendant Manley threatened to officially reprimand Kyra for leaving a game [early]."  (Id. (emphasis added).)  In other words, the Amended Complaint

itself suggests that in both instances Defendant Manley had legitimate, non-race-based reasons for requiring Kyra to sit out: first, because she had been absent from school the day of the game; and second, because she had left the game early after being told that she would not start.  Once again, Plaintiffs' allegations fail to raise a plausible inference of racial bias, much less the inference that Defendant Manley violated clearly established law.  Accordingly, Plaintiffs' claims against Defendant Manley in her individual capacity are dismissed.

In sum, Plaintiffs simply do not allege the kind of "specific facts that, if proved, would overcome the [Individual Defendants'] immunity defense; complaints alleging conclusory allegations, absent reference to material facts, will not survive motions to dismiss."  Geter, 849 F.2d at 1553.  Plaintiffs have not alleged that the Individual Defendants treated similarly situated students of other races differently than they treated Plaintiffs.  They have not alleged facts that raise the inference that the Individual Defendants' actions were racially motivated. Accordingly, Plaintiffs have failed to plead any specific facts with respect to each individual Defendant that, if proven, would demonstrate that Plaintiffs were deprived of a constitutional right.  As a result, Defendant Davis, Defendant Smith, and Defendant Manley are entitled to qualified immunity, and Plaintiffs' claims against them are dismissed.

II.     Plaintiffs' § 1983 Claims Against the Marion ISD

      A.     <u>Stating a § 1983 Claim against a Local Government Unit</u>

            Plaintiffs also bring § 1983 claims against the Marion ISD.  (Doc. # 4 at 13–15.)  While a plaintiff may bring § 1983 claims against a municipality or local government unit, the Supreme Court and Fifth Circuit have "reject[ed] municipal liability based on <u>respondeat superior</u>, because the text of section 1983 will not bear such a reading."  <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001); <u>see also</u> <u>Rhyne v. Henderson County</u>, 973 F.2d 386, 392 (5th Cir. 1992) ("A municipality, of course, can act only through its human agents, but it is not vicariously liable under § 1983.").  Instead, Section 1983 liability can be imposed only when the plaintiff shows that "(1) the constitutional violation was caused as the direct result of the execution of an official 'custom' or 'policy'; (2) the custom or policy was approved or sanctioned by the entity's 'final policymaker'; and (3) the final policymaker acted with 'deliberate indifference' and the custom or policy was the "moving force" behind the violation." <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001) (quoting <u>Monell v. New York Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)).

            A school district is considered a local governmental unit under <u>Monell</u>, and the district's Board of Trustees is the district's "final policymaker" for

purposes of a § 1983 claim.  See Rivera v. Houston Indep. Sch. Dist., 349 F.3d

244, 247–48 (5th Cir. 2003) (distinguishing between "decision-making authority,"

which may be delegated to school administrators, and "policymaking authority,"

which "lies exclusively with the Board [of Trustees]" under Texas law); see also

TEX. EDUC. CODE. § 11.151(b) (West 2011) ("The trustees as a body corporate

have the exclusive power and duty to govern and oversee the management of the

public schools of the district.").

        In other words, where a plaintiff does not identify a formal "policy

statement" of ignoring or condoning race-based harassment, the plaintiff may

nevertheless state a claim against the school district by alleging "[a] persistent,

widespread practice" of racial discrimination, "which, although not authorized by

officially adopted and promulgated policy, is so common and well settled as to

constitute a custom that fairly represents [district] policy."  Webster v. City of

Houston, 735 F.2d 838, 841 (5th Cir. 1984) (emphasis added); see also Monell,

436 U.S. at 694 (holding that the government as an entity is liable under § 1983

when the constitutional deprivation is caused by the actions of those individuals

"whose edicts or acts may fairly be said to represent official policy").  "Actual or

constructive knowledge of such custom" must be fairly attributable to the Board of

Trustees.  Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992).  A "handful" of

instances do not rise to the level of a pervasive custom or practice.  <u>Pineda v. City
of Houston</u>,  291 F.3d 325, 329 (5th Cir. 2002).  Additionally, the policy or custom
must be the "moving force" behind the alleged constitutional violation.
<u>Piotrowski</u>, 237 F.3d at 580.

> B.    <u>Plaintiffs Fail to State a Claim Against the Marion ISD under § 1983</u>

Plaintiffs have not identified a formal "policy statement" of ignoring
or condoning race-based harassment or discrimination that was "officially adopted
and promulgated" by the Marion ISD Board of Trustees ("the Board").  Instead,
Plaintiffs assert that the Marion ISD is liable under § 1983 "because its practice of
allowing teachers, coaches, administrators and students [to target] African-
American students is widespread throughout the District; and [because], although
not authorized by officially adopted policy, [such harassment] is so common and
well settled as to constitute a custom that fairly represents official policy."  (Doc. #
4 at 14.)  In the alternative, the Plaintiffs allege that the Marion ISD "is liable
under § 1983 for failing to adopt clear policies outlining the procedures for
resolving racial harassment and bullying of students by teachers, coaches,
administrators and other students, and for failing to adopt clear policies to prohibit
the practice of racial harassment and bullying."  (Doc. # 4 at 14.)  For the reasons

given below, the Court concludes that Plaintiffs fail to state a claim under either theory.

     1.     <u>Plaintiffs Fail to State a Claim Under § 1983 Based on a Custom or Policy of Racial Discrimination</u>

To state a claim against the Marion ISD in the absence of an official policy of race-based discrimination, Plaintiffs must allege facts sufficient to permit the Court to conclude that the Marion ISD Board of Trustees—the body with "final policymaking authority" for § 1983 purposes—sanctioned or was deliberately indifferent to a pervasive custom of ignoring or condoning race-based discrimination and harassment.  <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001) (<u>citing</u> <u>Monell v. New York Dept. of Social Services</u>, 436 U.S. 658, 694 (1978)).  "[I]solated events are generally insufficient to be the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability."  <u>Gates v. Texas Dep't of Protective & Regulatory Servs.</u>, 537 F.3d 404, 437 (5th Cir. 2008) (citing <u>Campbell v. City of San Antonio</u>, 43 F.3d 973, 977 (5th Cir. 1995) (internal quotations omitted); <u>see also</u> <u>Piotrowski</u>, 237 F.3d at 578 ("[I]solated unconstitutional actions by municipal employees will almost never trigger liability."); <u>Webster</u>, 735 F.2d at 842 ("If actions of city employees are to be used to prove a custom for which the

municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.").

While many of Plaintiffs' allegations, if true, are indeed abhorrent, they have not alleged facts sufficient to give rise to an inference that the Marion ISD Board of Trustees condoned or was deliberately indifferent to racial discrimination by Marion ISD employees. First, for the reasons described above, Plaintiffs have failed to state a claim against any of the Individual Defendants, who are former employees of the Marion ISD. Moreover, none of the facts Plaintiffs allege give rise to an inference that the Individual Defendants or their coworkers were behaving according to an unofficial custom of racial discrimination. Instead, the vast majority of discriminatory acts alleged—and the particularly despicable ones—were committed by other students, not by Marion ISD employees. (See, e.g., doc. # 4 at 6, wherein Plaintiffs allege that multiple white classmates, on multiple occasions, called Kavin names such as "blackie, "black girl," and "nigger"; id. at 4 & 7, wherein Plaintiffs allege that other students attempted to frighten them with an animation of a noose and with two actual nooses.)

While a plaintiff may also bring a § 1983 discrimination claim based on peer-to-peer harassment, the standard is the same: the plaintiff must show that the school district had a policy or custom of being "deliberately indifferent" to student harassment.  See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291 (1998) (acknowledging the "adoption of a deliberate indifference standard for claims under § 1983 alleging that a municipality's actions in failing to prevent a deprivation of federal rights was the cause of the violation"); see also Wilson v. Beaumont Indep. Sch. Dist., 144 F. Supp. 2d 690, 693 (E.D. Tex. 2001) ("If a defendant does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment.") (internal quotations and alterations omitted).

Again, however, Plaintiffs have not pled any facts that suggest that school administrators were "deliberately indifferent" to student-on-student racial harassment.  Instead, the Amended Complaint suggests that there were non-race-based reasons why school officials responded to the alleged harassment from other students as they did.  For example, the Amended Complaint alleges that Kyana "was disciplined" after she "retaliated and punched the boy" who called her a "nigger" in kindergarten, while the boy was not disciplined.  (Doc. # 4 at 5.) However, it is not unreasonable for a teacher to decide that a kindergarten-age

22

child should not be punished for using a racial epithet that he probably did not understand while also deciding that a kindergarten-age child should understand that punching another student is unacceptable.  Similarly, the Amended Complaint alleges that some sort of racial bias was the animus behind the Marion ISD's failure to apprehend and punish the person who left a noose outside Kyana's car, but it also concedes that the video surveillance equipment for the parking lot failed to show any activity around Kyana's car in the relevant time period and that the Marion Police Department and FBI chose not to pursue the allegations either.  (Id. at 7.)

As a final example, Plaintiffs allege that in February 2011 one white girl and two Hispanic girls surrounded Kavin at her locker and that Kavin was "punched and thrown back against her locker" when she "defended herself against these multiple attackers."  (Id.)  Plaintiffs claim that the school suspended Kavin and one of the Hispanic girls based on this incident but "took no action against [Kavin's] white attacker."  (Id.)  Once again, the Court does not find these facts, taken as true, to be sufficient to raise the inference that school administrators responded to peer harassment in a way that was unreasonable.  The Amended Complaint does not indicate that the "white attacker" was the one who punched Kavin and threw her back against her locker; indeed, the Amended Complaint uses

23

the passive voice (Kavin "was punched and thrown back against her locker" (id.)), making it impossible to know which of the three students physically attacked Kavin.  Moreover, the Amended Complaint indicates that the school did suspend one of Kavin's three alleged attackers.  (Id.)  The Court simply cannot conclude that the school acted unreasonably or with deliberate indifference with regard to this incident in the absence of the allegation that the white student was the one who actually punched Kavin or was somehow more culpable than the student who was suspended.  Nor can the Court conclude that the school's decision to suspend Kavin was racially motivated when the Amended Complaint does not indicate that school administrators were aware that Kavin was the victim of racial harassment and not merely a participant in a commonplace schoolyard brawl.  See Davis, 526 U.S. at 648 ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators.").  In short, because there are many non-race-based explanations for the actions school administrators took in this case, Plaintiffs' allegations fall short of raising an inference that the Marion ISD had an unofficial policy of tolerating discrimination against African-Americans.

Finally, even if such a custom existed, there is no evidence showing the Board had actual or constructive knowledge of its existence.  See Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992) ("Actual or constructive knowledge of such

custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.").  The Amended Complaint mentions the Board of Trustees just once, stating that the "[t]he Level I grievance [Ms. Fennell-Kinney had filed] culminated in a Level III grievance before the entire Marion ISD Board of Trustees where Ms. Fennell-Kinney requested several different remedies, none of which the District agreed to or acceded to at the time."  (Id. At 9–10.)  It does not indicate what the allegations in that grievance were (whether, for example, they were the same allegations made against the Individual Defendants in this litigation); what the remedies Ms. Fennell-Kinney requested were; or, as is suggested by the claim that the Board did not agree to Ms. Fennell-Kinney's recommendations "at that time," whether the Board did eventually agree to some of them.  Nothing in the Amended Complaint suggests that the Board of Trustees was aware of a widespread custom of tolerating discrimination against African-Americans.  Again, while all reasonable inferences will be resolved in favor of the Plaintiffs, they must plead "specific facts, not mere conclusory allegations."  Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994).  Thus, even taking Plaintiffs' claims as true, Plaintiffs fail to state a claim against the Marion ISD under § 1983.

2.      <u>Plaintiffs Fail to State a Claim under § 1983 Based on a Failure to Supervise and Train</u>.

Plaintiffs' allegation that the Marion ISD failed to properly supervise and train its employees fares little better.  To establish a claim under § 1983 for failure to train or supervise, a plaintiff must show: (1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to "deliberate indifference."  <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989); <u>Estate of Davis v. City of North Richland Hills</u>, 406 F.3d 375, 381 (5th Cir. 2005).  To satisfy the "deliberate indifference" prong, a plaintiff must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in the constitutional violation.  <u>Estate of Davis</u>, 406 F.3d 375 at 381.  For the reasons already given, Plaintiffs have not alleged facts sufficient to raise an inference that school administrators were "deliberately indifferent" to racial harassment in the Marion ISD or that training regarding the handling of racial harassment was obviously deficient.  Instead, the Amended Complaint itself suggests that the administrators had legitimate, non-race-based reasons for acting as they did.  Accordingly, Plaintiffs fail to state a claim under § 1983 based on a failure to supervise and train.

III.    Plaintiffs' Title VI Claims Against the Marion ISD

Title VI of the Civil Rights Act of 1964 is a general prohibition against discrimination by federally funded programs. Section 601 of Title VI, as amended, provides that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."  42 U.S.C. § 2000d.  Public educational institutions that receive federal funds are subject to this mandate.  See 34 C.F.R. § 100.13(i) (2000) (defining "recipient" to include any public "agency, institution, or organization, or other entity . . . in any State, to whom Federal financial assistance is extended").  Courts have recognized a private right of action under Title VI if the violations alleged involve intentional discrimination by the funding recipient.  See Alexander v. Sandoval, 532 U.S. 275, 280–81 (2001) (Title VI, on which Title IX is patterned, prohibits only intentional discrimination).

In cases of alleged student-on-student harassment, only "deliberate indifference" to such harassment can be viewed as discrimination by school officials themselves.  See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 648 (1999).  "Deliberate indifference" is found if the school administrator "respond[s] to known peer harassment in a manner that is . . . clearly

unreasonable." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 649 (1999).

While Davis was a Title IX case, the standard is the same for cases brought under

Title VI.  See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 258 (2009)

("Congress modeled Title IX after Title VI of the Civil Rights Act of 1964, and

passed Title IX with the explicit understanding that it would be interpreted as Title

VI was.") (citation omitted); Gebser v. Lago Vista Indep. Sch. Dist, 524 U.S. 274,

286 ("The two statutes operate in the same manner . . . ."); see also Zeno v. Pine

Plains Cent. Sch. Dist., 702 F.3d 655 (2d Cir. 2012) ("Title VI provides a private

right of damages against a school district for student-to-student harassment if the

school district was deliberately indifferent to the known harassment.").

      The deliberate indifference standard outlined by the Supreme Court in

Davis is a narrow one.  See 526 U.S. at 644–45 (Title IX "cabins the range of

misconduct" prohibited, and a school district's liability is limited).  Liability only

arises if a plaintiff establishes: (1) substantial control by the funding recipient over

the harasser, (2) severe and discriminatory harassment, (3) actual knowledge, and

(4) deliberate indifference.  See id., 526 U.S. at 643–50; see also Gant v.

Wallingford Bd. of Educ., 195 F.3d 134, 140 (2d Cir. 1999) (Title VI claim

requires plaintiff to show "that the defendant's indifference was such that the

defendant intended the discrimination to occur").

Plaintiffs allege that the Marion ISD, which receives federal financial assistance, violated Title VI by intentionally discriminating against them based on race.  Specifically, the Amended Complaint alleges that "the District was keenly aware of the racial harassment over a several-year period and did not take appropriate action to stop the racial harassment and bullying by teachers, coaches, administrators and students which was certainly within the control of the District." (Doc. # 4 at 11–12.)   For the reasons described above, Plaintiffs have not alleged sufficient facts so raise an inference that the named Individual Defendants intentionally discriminated against Plaintiffs or that school administrators acted with such deliberate indifference to racial harassment that intentional discrimination could be attributed to the Marion ISD.  Accordingly, Plaintiffs fail to state a claim under Title VI.

IV.    Leave to Amend

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."  Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981).  Following the Supreme Court's guidance, the Fifth Circuit uses five

factors to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment.  Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Absent any of these factors, leave should be "freely given."  Foman, 371 U.S. at 182.

Because none of the five Foman factors applies in this case, the Court will allow Plaintiffs an opportunity to file a Second Amended Complaint within forty-five (45) days of the filing of this Order.  Failure to do so and to cure the pleading deficiencies will result in dismissal of this action with prejudice.

## CONCLUSION

For the reasons given, it is hereby **ORDERED** that Plaintiffs' claims against the Individual Defendants in their official capacity are **DISMISSED WITH PREJUDICE**; Plaintiffs' remaining claims are **DISMISSED WITHOUT PREJUDICE**.  It is **FURTHER ORDERED** that Plaintiffs are granted leave to file a Second Amended Complaint and that such Second Amended Complaint must be filed on or before March 14, 2013.

IT IS SO ORDERED.

DATED: San Antonio, TX, January 28, 2013.

_____
David Alan Ezra
Senior United States District Judge