IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KYANA FENNELL, AND LAWANDA | § | |
| FENNELL-KINNEY AS NEXT FRIEND OF | § | |
| KYRIANNA ADAMS FENNELL AND KAVIN | § | |
| JOHNSON | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.:  5:12-CV-0941-DAE |
| | § | |
| MARION INDEPENDENT SCHOOL | § | |
| DISTRICT; GLENN DAVIS, INDIVIDUALLY; | § | |
| ASHLEY SMITH, INDIVIDUALLY; AND | § | |
| CYNTHIA MANLEY INDIVIDUALLY, | § | |
| Defendants | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

N**OW COMES** KYANA FENNELL, AND LAWANDA FENNELL-KINNEY AS NEXT FRIEND OF KYRIANNA ADAMS FENNELL AND KAVIN JOHNSON (hereinafter referred to as Plaintiffs), complaining of MARION **INDEPENDENT SCHOOL DISTRICT**, (hereinafter referred to as either "MISD" or "the District"), GLENN DAVIS, INDIVIDUALLY, ASHLEY SMITH, INDIVIDUALLY, AND CYNTHIA MANLEY INDIVIDUALLY, Defendants, and for cause of action would respectfully show unto this Honorable Court as follows:

1

# I.
# PARTIES

<u>Plaintiffs</u>

1.      Plaintiff, **KYANA FENNELL** is a former student of the Marion Independent School District, and is currently attending college in Kingsville, King County, Texas.  Her permanent residency is in Guadalupe County, Texas.

2.      Plaintiff **KYRIANNA ADAMS FENELL** is a former student of the Marion Independent School District, and is currently residing in Schertz, Texas, Guadalupe County, Texas.

3.      Plaintiff **KAVIN JOHNSON** is a former student of the Marion Independent School District, and is currently residing in Schertz, Texas, Guadalupe County, Texas.

4.      Plaintiff **LAWANDA FENNELL-KINNEY** as Next Friend of Plaintiffs Kyrianna Adams Fennell and Kavin Johnson is a resident of Marion, Texas, Guadalupe County, Texas.

<u>Defendants</u>

5.      Defendant, **MARION INDEPENDENT SCHOOL DISTRICT**, is a political subdivision of the State of Texas and has previously been served with process.

6.      Defendant, GLENN DAVIS, is the former Athletic Director at Marion High School, MISD and has previously been served with process.

7.      Defendant, ASHLEY SMITH (n.k.a. Farris), is the former assistant Girls Basketball Coach at Marion High School, MISD, and has previously been served with process.

2

8.      Defendant, CYNTHIA MANLEY, is a former Coach at Marion High School, MISD, and has previously been served with process.

## II.
## JURISDICTION AND VENUE

9.      This is a civil rights action for monetary damages and attorney's fees.  It is brought to redress the deprivation under color of State law of rights, privileges and immunities secured to the Plaintiffs by the Constitution and laws of the United States and the State of Texas. This action arises under the Fourteenth Amendment to the Constitution of the United States and under 42 U.S.C. §1983, and Title VI of the Civil Rights Act of 1964, as amended, with jurisdiction authorized and conferred on the Court by 28 U.S.C. §§1331 and 1343.

10.      Jurisdiction is proper in this venue pursuant to Rule 57 of the Federal Rules of Civil Procedure and because the acts complained of occurred in the Western District of Texas, San Antonio Division.

## III.
## FACTUAL BACKGROUND

11.      Plaintiffs, Kyana Fennell, 18, Kyrianna (Kyra) Adams Fennell, 15, and Kavin Johnson, 13, are sisters and the daughters of Plaintiff Lawanda Fennell-Kinney.  Lawanda Fennell-Kinney has been a resident of Marion, Texas all her life, having attended school in the Marion Independent School District, and deciding to raise her family in the same town, attending the same schools.  All three girls, Kyana, Kyra and Kavin attended school in Marion ISD beginning in the first grade until recently at the end of the 2011-2012 academic school year,

when they were forced to leave the Marion ISD because of a long and sad history of racial discrimination and a racially-hostile environment.

12.     The Plaintiffs are African-Americans in the small town of Marion which boasts less than 1,100 in its population, and very few African-Americans, less than five percent of the total population.  Ms. Fennell-Kinney, however, has deep roots in the community and is the third-generation of African-Americans in her family to live in Marion.  Ms. Fennell-Kinney felt safe in raising her family in Marion and allowing her children to attend the Marion ISD schools.

13.     As early as 2008, her children began experiencing racially-based comments, taunts and electronic images sent via cell phone texts and on social media websites such as Facebook.  In 2008, Kyra was suspended from school for three days for fighting after she had received a text message from a white classmate, which included a picture animation of the Klansmen of the Ku Klux Klan (KKK) swinging a noose to the music of a popular song at the time.  Kyra confronted the white classmate and Kyra was suspended for three days.  Principal Wendel was made aware of the situation involving the text, but no action was taken against the white classmate.  Kyra has been subjected to racial comments and slurs from then through the 2011-2012 academic school year.  Each time the comments are reported to school officials, but no action is taken against the white students.

14.     In February, 2011, Kavin was surrounded at her locker by a group of students, one white, and two Hispanic girls, that were taunting her.  When she tried to extricate herself she was punched and thrown back against her locker.  Kavin defended herself against these multiple attackers and she was suspended for two days and received an Off Campus Suspension (OCS).

The school took no action against her white attacker, and suspended one of the Hispanic girls. The principal refused to conduct an investigation into the incident until after Kavin had completed the disciplinary action and then determined that, in fact, Kavin was acting in self-defense.  However, because the "time period" had passed to take action, no further action was taken against the other white and Hispanic aggressors.  Kavin was punished unnecessarily and her white attacker, in particular, was not punished at all.

15.    On numerous occasions from 2011 to 2012, Kavin reported to the Marion Middle School principle Mr. Wendel, then later Ms. Kelley Walters, after having been called such names as "blackie," "black girl," and "nigger" by multiple white classmates.  On one occasion during her seventh grade year, when a classmate told a "black" joke, Kavin reported the incident to her teacher, Mr. Alferbacht, and also to the principle, Ms. Walters.  In all these situations the school administrators took no action to stop or resolve the situation, or to punish the students.  When Kavin tried out for the middle school cheerleader squad for the 2011-2012 school year, she was told by white classmates that "black girls weren't pretty enough to be cheerleaders" and that "she looked like a boy."   Kavin subsequently made the team, but was excluded from cheerleader activities sponsored by many of her white classmates, and ostracized by her teammates.

16.    Kyana has experienced more racial harassment because she has been in the District longer by virtue of her greater age.  She has experienced racial harassment in the form of racial name-calling since elementary school and kindergarten when she was called "nigger" on a bus by a little white boy.  When Kyana retaliated and punched the boy, she was disciplined.  No action taken against the little white boy.  More recently, the racial harassment has increased and

escalated to new levels.  In middle school, Kyana was called a "nigger" by a classmate, and no

action taken against the classmate.  In high school, Kyana has been admonished by the white

athletic director, Coach Glenn Davis, for her "ethnic" hairstyles, when she was required to wear

her hair in "micro-braids" because of damage to her hair.  White students who wore their hair in

different shades of colors, like purple, red, or green, were not similarly rebuked or admonished.

In her sophomore year, a white male classmate, Derek Pierce, called Kyana a "stupid nigger."

Kyana's parents reported the incident to school officials, but no action was taken against this

student.

17.    On January 17, 2012, a white coach and teacher, Ashley Smith, told Kyana that

she was a "bad influence" because Kyana had a child at the age of 17.  This comment was made

in front of other white students.  These types of remarks reflect a stereotypical attitude towards

young African-American girls who have children outside of marriage.  Coach Smith has never

been heard to make such comments to her white students, regardless of what problems or trouble

they may have experienced.  In contrast, she went out of her way to make a moral judgment

concerning Kyana's situation.

18.    On January 21, 2012, Lawanda Fennell-Kinney posted a comment on her

Facebook page to her family and friends about the Smith incident without identifying the

teacher, and commenting on the unprofessionalism of the teacher and the inappropriateness of

the comments.  Later that day, at the Guadalupe County Youth show, Justin Farris, fiancé of

Ashley Smith, confronted Ms. Fennell-Kinney in such a hostile and aggressive manner that

"acting" security came over and escorted Mr. Farris from the building.  On January 24, 2012, in

fear for the safety of her daughter, Kyana, Ms. Fennell-Kinney and her husband met with the principal, assistant principal and counselor and athletic director, Defendant Davis, to discuss their safety concerns.  Ms. Fennell-Kinney suggested that Defendant Smith not coach that evening's basketball game to avoid any confrontation, and that Justin Farris also not be allowed to attend the game.  The school officials agreed and Defendant Smith did not coach that evening's game.

The following day, Kyana was harassed by several students, including the sister of Justin Farris.  Ms. Fennell-Kinney complained to the vice-principal and requested a Level I grievance packet to file such a grievance for the continued harassment of her children by teachers, coaches, administrators and students.

19.     On February 6, 2012, Ms. Fennell-Kinney found a noose that was left beside Kyana's car along with a racially-hateful note and death threat.  The note stated,

> *"Die fuckin 'nigger sisters'….Bitches!!!*
> *You can never bring our families down…*
> *Whites will always rule this town and this school!!!!*
> *Damn spooks!!!!*
> *So go ahead and file your stupid damn complaints and grievances…..*
> *NIGGERS…..and that 'Nigger lover' you have a baby with….."*

This was reported to the Marion ISD police, the Marion Police Department, and eventually the FBI as a possible hate crime.  However, there were no suspects and no arrests.  The video surveillance equipment for the parking lot somehow failed to show any activity around Kyana's car in the relevant time period.  One of the cars parked next to Kyana's car belonged to Derek Pierce, the same boy who had previously called Kyana a "stupid nigger" and suffered no consequences by the school.  In fact, he was heard to brag after the noose incident

that "He would love to shake the hand of the person who did it" and he was seen in his car staring at Kyana before practice and before the noose was found.  However, no one was charged with the hate crime.

20.    This incident and the earlier comments by Ashley Smith prompted additional bullying and racial harassment of all of Ms. Fennell-Kinney's children by their white classmates. On February 13, 2012, Kavin was involved in an altercation with another white student that included the student spitting in Kavin's face and telling her "Why don't you people just move." Principal Walters was called to intervene, but no disciplinary action was taken against the white student.

During the spring semester of the 2010-2011 school year, Doug Giles, a ward of Lawanda Fennell-Kinney was called "Nigger" by his white classmates at the high school, and in January 6, 2012, he wrote a statement that someone hung a noose by his locker.  He reported the incident to the athletic director, Glenn Davis.  The only action Defendant Davis took was to tell the team as a whole to "knock it off."  The incident was not reported to Lawanda Fennel-Kinney until February 4, 2012.  Again, an incident of outright racism and bigotry was not properly investigated and was not even reported to the parents of Doug Giles until a month later.  Again, showing the deliberate indifference of Defendant Davis and the Marion ISD towards the racially hostile environment perpetrated on African-American students in the District.

The incidents targeting Doug Giles contributed to the racially hostile environment being experienced by Plaintiffs Kyana, Kyra and Kavin.  There are less than 1 percent African-

American students in the county-wide Marion ISD, and they are an easy target for white students, teachers, and administrators.

21.     Facebook and other social media, such as Twitter, are also outlets for racially-charged comments and innuendo.  Particularly since the noose incident was reported on local news stations, there have been many comments posted that the Fennell-Kinney family should leave Marion, and that the whole noose incident was concocted by the family.  Some of these comments came from Defendant Smith, Donna Farris, mother-in-law to be of Defendant Smith, and the children of Defendant Davis.

22.     On behalf of her children, Lawanda Fennell-Kinney filed a Level I grievance complaining of the racial harassment and hostile environment experienced by her children at the hands of white teachers, coaches, administrators and students.  Unfortunately, that harassment continued.

23.     Kyra played on the girls' varsity softball team with Defendant Cynthia Manley as the coach.  The team had a game in Lulling, Texas, on April 17, 2012, and the team members were given a form that told them to report to the school at 2:55 pm for a 3:05 pm departure.  Defendant Cynthia Manley deliberately left the school ten minutes early, at 2:55 pm, when the notice to the players clearly stated the bus would leave at 3:05 pm.  Kyra was the only player not on the bus, and Coach Manley refused to stop the bus when Kyra showed up at 2:55 pm, although she clearly saw her waving at the stop sign.  Another parent drove Kyra to the softball field for the game following behind the bus.  At the game, Defendant Manley refused to start Kyra in her position as shortstop stating that because she had signed out from school for lunch on

a game day, and Manley did not know where she was, she couldn't start.  Ms. Fennell-Kinney arrived at the softball field to take her distraught daughter home.  Defendant Manley threatened to officially reprimand Kyra for leaving a game and showed no concern for Kyra's well being. In fact, Defendant Manley made Kyra sit out the next game and effectively punished Kyra twice for the same alleged infraction.  Defendant Davis had the authority to override the punishment and chose not to do so.  Coach Manley was not disciplined for leaving Kyra at the school.  On several occasions prior to this date, other white softball players had signed out for lunch on game day and had not been disciplined or otherwise singled out by Coach Manley.  Kyra, the only African-American player on the team, signed out once for lunch and was both left behind by Coach Manley and disciplined further by being denied the opportunity to play that game and the next one as well.

On the day of the Lulling game, a team photo was taken without Kyra present.  In the photo, one of her white teammates was in a shadow.  Many of Kyra's white teammates joked "Who's the black girl?" and "Oh, that's Kyra, we cropped her in to the picture since she was on her lunch date and missed the photo."  There was no rebuke of the students by Coach Manley for these comments although they were made in her presence.  These comments got back to Kyra and continued to perpetuate the hostile environment in which she had to exist daily at school.

The evening of April 17, 2012, Kyra received a text message from a white teammate that relayed negative comments made by other white teammates about Kyra's sister Kyana and Kyana's child.

24.     On April 19, 2012, there was a verbal confrontation between Kyana and two of Kyra's white teammates at the softball field, off campus, regarding those comments. Although Defendant Manley did not witness the incident, she encouraged the two white girls to file unsubstantiated criminal charges against Kyana requiring Kyana to hire an attorney and defend herself against those charges. Those charges have since been dismissed showing the scurrilous nature of the charges. However, the incident highlights to what lengths Coach Manley would go to help persecute Kyana, using the other two white students as "cat's paws" for her own racist attitudes and those reflected by the District.

25.     On May 17, 2012, Daryl Kinney, Kyra's father, complained to Mr. Hernandez, a counselor at the high school about an incident where Kyra had been singled out for punishment. In Mr. Kinney's complaint to Mr. Hernandez, Mr. Kinney complains that Kyra was singled out for punishment only after she had reacted to a physical affront by one of her white classmates. In fact, Kyra had been taunted by three of her white classmates over a period of several days. On each of the two previous occasions Kyra had reported the incidents to Mr. Hernandez, but no action was taken against the girls. The first time Kyra's grandmother came and got her from school. The second time her older sister, Kyana, picked her up for lunch, which resulted in the repercussions at the Lulling game. The incidents at school were exacerbated by comments made by these same girls on Twitter and Facebook, calling Kyra "a self-centered bitch" and "a bitch." These comments were reported to Mr. Hernandez by Kyra, but his response was that they were not at school and therefore "irrelevant." The third incident occurred on May 16, 2012, where one of the students intentionally bumped Kyra with her hip while Kyra was sitting at her desk in

her fourth period class.  When Kyra responded with "excuse you" she and the other girl were taken out of the class by Mr. Hernandez and threatened with suspension if the incidents continued.  Mr. Hernandez also cautioned Kyra about her Facebook postings about the three girls; an obvious contrast to the response he gave Kyra and her parents when they complained of the three white girls and their postings on social media.

Prior to the fourth period, Kyra went to Mr. Hernandez to ask "What do I do about fourth period?  They're all in there."  Mr. Hernandez responded "Go to class, sit down, and do your work."  Another incident occurred, Kyra responded, and she was singled out for punishment.  No actions were ever taken against the three white girls for the first two incidents.  However, when Kyra finally responds to a perceived physical confrontation, she is the one pulled out of class along with the one white girl.  Again, the District took no actions to protect one of its African-American students from harassment and verbal abuse, and only took action once the African-American student responded to the verbal and physical abuse.

26.     On May 30, 2012, Plaintiffs presented their Level III grievance to the entire Marion ISD Board of Trustees.  The Plaintiffs each read a history of the racial discrimination they had been subjected to during their tenure as students in the Marion ISD, at the hands of their classmates as well as from teachers, coaches and administrators.  They named the Defendants specifically alleging race discrimination in Defendants actions towards them as well as being subjected to a racially-hostile environment within the District.  Ms. Fennell-Kinney cited several violations of District policy including its "zero tolerance" of harassment policy.  Ms. Fennell-Kinney requested several different remedies including updating District policy to address the

12

situation as presented by the Plaintiffs; additional training for teachers and administrators concerning racially-hostile environments and harassment; and that the retaliation and bullying of her children would stop.  The District refused to agree to any of her proposed remedies, and instead stated that the District policies in placed were adequate as was the training of teachers, and administrator; and decided not to take any further action.  Consequently, seeing no further recourse from the District, Ms. Fennell-Kinney dis-enrolled Kyra and Kavin from the Marion ISD and enrolled them in the Schertz-Cibolo ISD where she believed they would not be subjected to that same racially-charged environment.  Kyana, the only African-American female in her senior class, graduated high school and is currently attending Texas A&M University-Kingsville.

    27.  The incidents of racial harassment experienced by the Plaintiffs are numerous and the incidents described herein are not exhaustive of all the incidents, only representative of the types of racial harassment experienced by plaintiffs at the hands of teachers, coaches, administrators and students at the overwhelmingly white Marion Independent School District. These incidents were hardly ever addressed by the District and little if no action was ever taken against the perpetrators of the racially motivated and vitriolic incidents.  As a result, the District failed to protect the Fennell-Kinney children from a racially-pervasive hostile environment, and caused them to continuously be exposed to verbal, physical and psychological abuse at the hands of their white teachers, coaches, administrators and fellow students.

    Even after the District was made aware of these incidents and the racially-hostile environment, the District refused to take any action to correct or resolve the situation.  This lack

of action by the District serves notice that the District is unconcerned with its African-American student population and silently endorses the practice of discrimination against such students.

28.     In its failure to adequately address these issues, the District has violated federal laws and the U.S. Constitution in allowing these children to be racially harassed and abused by teachers, coaches, administrators and other students.

Specifically, the District has violated Title VI of the Civil Rights Act of 1964, as amended; and 42 U.S.C. §1983 and the Fourteenth Amendment of the U.S. Constitution.

## IV.
## STATUTORY VIOLATIONS

### A.     DISCRIMINATION UNDER TITLE VI

29.     Plaintiffs complain that they were subjected to a racially-based hostile environment at school and that the Marion ISD failed to address the issue of racial harassment and hostile environment.  As a result of the District's failure the three children, Kyana Fennell, Kyra Adams Fennell and Kavin Johnson were continuously exposed to racial slurs, racial taunts, bullying, and graphic and physical expressions of racial hatred and death threats.  Plaintiffs complain that had the District taken immediate and effective remedial action beginning as early as 2008 in addressing these issues, the more recent incidents in 2011 and 2012 would not have occurred or would have been significantly curtailed or reduced.

30.     Section 601 of Title VI of the Civil Rights Act of 1964, as amended, provides "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."  A "program or activity" includes a

local educational agency, system of vocational education, or other school system such as a school district.   A school district has a legal duty to take reasonable steps to eliminate a racially hostile environment.

In this case, the Marion ISD was deliberately indifferent to the plight of the Plaintiffs although the District was keenly aware of the racial harassment over a several-year period and did not take appropriate action to stop the racial harassment and bullying by teachers, coaches, administrators and students which was certainly within the control of the District.  The racial harassment was so severe and pervasive and objectively offensive that it deprived Plaintiffs of the same educational experience as their white classmates, denied them equal access to the District's resources and opportunities,  and eventually resulted in them leaving the Marion ISD to escape the constant and pervasive racial harassment.

31.    These actions by the District are evidence that  Defendant District violated Title VI of the Civil Rights Act of 1964 as amended.   The actions of Defendant District were intentional and resulted in the racially hostile environment experienced by Plaintiffs.


**B.     <u>VIOLATIONS OF 42 U.S.C §1983</u>**

32.    The Civil Rights of 1871, now codified as 42 U.S.C.S. §1983 as federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the

party injured in an action at law, suit in equity, or other proper proceeding for redress."   42 U.S.C.S. §1983.

33.   42 U.S.C.S. §1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States.  As such, Plaintiffs allege that Defendants, jointly and/or severally deprived Plaintiffs of their Fourteenth Amendment equal protection rights and privileges, and is incorporated and applied to the states through the Fourteenth Amendment.

In this case, Plaintiffs complain that their constitutional right to equal protection under the law has been violated.  They have been the victims of racial discrimination through severe and pervasive harassment by both school officials and fellow students that has denied them equal access to the same educational opportunities enjoyed by their white classmates.  Such exposure to a racially-hostile environment is a violation of equal protection under the Fourteenth Amendment.  It is "clearly-established" law that students shall not be discriminated against based on their race, and such laws were known to the teachers, coaches and administrators during the time of the incidents as described above.

Defendant Glenn Davis violated these provisions by rebuking and admonishing Kyana Fennell for wearing micro-braids to school, and "ethnic" hair style when there was a perfectly good reason for the hair.  Defendant Davis has not admonished similarly-coiffed white female students who come to school with their multi-toned hair.  Defendant Davis further violated Kyra's rights by allowing the discriminatory punishment meted out to her by Defendant Manley stand, and not taking action to override the punishment which was within his power.  Defendant

16

Davis violated Plaintiffs' equal protection rights by not properly addressing and reporting the prior "noose" incident that happened to a member of the Fennell family.  This lack of action on his part is another example that the Marion ISD is deliberately indifferent to the plight of its African-American students, and that he has not been properly trained in how to handle such situations targeting African-American students with such vitriolic and hateful images such as a noose.

Defendant Ashley Smith violated the provisions of equal protection rights of Plaintiff Kyana Fennell by calling her a "bad influence" in front of her white classmates because Kyana is a young mother in high school.  Defendant Smith never treated any of Kyana's white classmates in such a manner and had never made comments on situations involving their private lives as she did Kyana.

Defendant Cynthia Manley targeted both Kyra and Kyana and violated their equal protection rights by her actions.  In Kyra's case, as is outlined above, Defendant Manley left her behind for a game, although Kyra was on time.  Defendant Manley further violated Kyra's rights by punishing her for signing out for lunch on a game day by denying her the opportunity to play for two games.  In contrast, Defendant Manley had never before punished any of Kyra's white classmates for signing out for lunch on game day, although that had occurred on several occasions.  Defendant Manley violated Kyana's equal protection rights by encouraging two white students to file unsubstantiated criminal charges against Kyana for a verbal confrontation of which Coach Manley did not witness.  Defendant Manley used these two white girls as "cat's paws" to further her racist attitudes towards Kyana.

As teachers, coaches and administrators, Defendants Davis, Smith and Manley have an

17

obligation to deal fairly with all their students.  Instead, these Defendants have misused their positions and power to target and harass the African-American children of Lawanda Fennell-Kinney and to allow students to target and harass those same children.

34.     Under §1983, Defendant Marion ISD is also liable for failing to supervise and/or failing to train, and/or acquiesced in unconstitutional behavior by its employees. First, Defendant District failed to properly train and failed to properly supervise its teachers, coaches and administrators, and failed to take appropriate actions to discipline students who harassed Plaintiffs and is liable under §1983, as there is a causal connection between its actions and/or omissions and Plaintiffs' constitutional violations, as outlined throughout this entire pleading.

35.     It is also well-established that school districts are liable under 42 U.S.C.S. § 1983 for constitutional torts that are in compliance with their customs, practices, policies or procedures.  A school district is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision making channels.  In this case, Defendant Marion ISD is liable because it sanctioned the custom, practice and/or policy or procedures of, *inter alia*, 1) allowing teachers, coaches and administrators to forego their duties and obligations to protect students from racial harassment; 2) failing to discipline those students whom are found to have racially harassed other students; 3) failing to adequately supervise teachers, coaches and administrators in the performance of their duties; 4) allowing teachers, coaches, administrators to target African-American students through more severe punishments, threats of punishments, and censure in front of white classmates; and 5) failing to impose proper and sufficient policies and/or

procedures as to the racial harassment and bullying of students in general and African-American students in particular.

36.     The actions and/or inaction taken in this case was uncalled for and taken pursuant to the customary practices and/or policies or procedures that were sanctioned by all named entity Defendants.  Liability for Defendant Marion ISD is established under §1983 because its practice of allowing teachers, coaches, administrators and students harassing African-American students is widespread throughout the District; and that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy.  Defendant Marion ISD had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers.   The incidents were reported consistently to Marion ISD administrators and school officials over a several-year period to such a degree that Defendant District had constructive knowledge of such incidents.   Defendant Marion ISD's unspoken policies above demonstrate decisions that reflect deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. In the alternative, Defendant Marion ISD is liable under §1983 for failing to adopt clear policies outlining the procedures for resolving racial harassment and bullying of students by teachers, coaches, administrators and other students, and for failing to adopt clear policies to prohibit the practice of racial harassment and bullying.

37.     Moreover, Defendant Marion ISD is liable for the inadequate training of their teachers, coaches and administrators under §1983.  Liability attaches to Defendant Marion ISD because its failure to train amounts to deliberate indifference to the rights of the African-

American students in the District and continuously places those students within a racially-hostile environment.

Even after the District was made aware of the plight of these African-American students, the District refused to conduct additional training for its teachers and administrators, kept its policies in place, and decided not to take any further action.

These actions and inaction by the Marion ISD deprived Plaintiffs of their right under the Constitution to equal access to education and the right not to be harassed and discriminated against on the basis of their race, African-American.  Plaintiffs have been treated in a disparate manner compared to their white classmates who were not disciplined for their race-based harassment of Plaintiffs, and instead, Plaintiffs were disciplined for standing up for themselves in the face of this pervasive and severe racial harassment and bullying.

## V.
## DAMAGES

38.    Due to the violations of the aforementioned Acts, Plaintiffs have suffered humiliation, mental anguish and emotional pain and suffering.  Because of the Defendants' intentional, malicious and knowing violations of the above Acts, Plaintiffs seek punitive damages as well under Title VI and 42 U.S.C. §1983.

39.    Plaintiffs further seek all attorney's fees and costs associated with this litigation as provided for by each Act stated above and under 42 U.S.C. §1988.

**VI.**
**JURY DEMAND**

Plaintiffs asserts their rights under Title VI of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §1983 and makes a demand for jury trial.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that the Defendants be cited to appear and answer herein and upon final hearing hereof, Plaintiffs have judgment of and from the Defendants for all the damages in an amount in excess of the minimum jurisdictional limits of this Court, reasonable attorney's fees as allowed by statute, expenses and costs, together with costs of court, exemplary damages, and pre-judgment and post-judgment interest at the highest legal rate.  Plaintiffs further pray for any and all further relief to which they show themselves to be justly entitled, either at law or in equity.

Respectfully submitted,

FORTÉ & PITTARD, P.L.L.C.
1777 NE Loop 410, Suite 600
San Antonio, Texas 78217
Telephone: (210) 678-3075
Telecopier: (210) 820-2609

By:     /s/ R. Chris Pittard
        R. CHRIS PITTARD
        State Bar No. 00794465

        ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/EMF system which will send notification of such filing to the following:

D. Craig Wood
Stacy Tuer Castillo
Walsh, Anderson, Brown, Aldridge & Gallegos, P.C.
100 N.E. Loop 410, Suite 900
San Antonio, Texas 78216
ATTORNEYS FOR DEFENDANTS

/s/R. CHRIS PITTARD
R. CHRIS PITTARD